1  Perry R. Clark (California Bar No. 197101)
   Law Offices of Perry R. Clark
2  3457 Cowper St.
   Palo Alto, CA 94306
3  Telephone: (650) 248-5817
   Facsimile: (650) 618 8533
4  E-Mail: perry@perryclarklaw.com

5  Counsel for Plaintiff
   PETROLIAM NASIONAL BERHAD ("PETRONAS")

6

7

8              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
9                   OAKLAND DIVISION

10

11 PETROLIAM NASIONAL BERHAD         ) Case No.: C09-5939 PJH
   ("PETRONAS")                      )
12              Plaintiff,           ) OPPOSITION TO MOTION FOR
                                     ) JUDGMENT ON THE PLEADINGS AND
13      vs.                          ) FOR ATTORNEYS'S FEES AND COSTS
                                     )
14 GO DADDY.COM, INC.,               ) Date: September 8, 2010
                Defendant.           ) Time: 9:00 a.m.
15                                     Courtroom 3
                                       Judge: Hon. Phyllis J. Hamilton
16

17

18

19

20

21

22

23

24 OPPOSITION TO MOTION FOR JUDGMENT
   AND FOR FEES AND COSTS
   Case No.: C09-5939 PJH
                              0

## I. INTRODUCTION

GoDaddy's motion should be denied because it rests on a fatally defective "straw-man" argument, namely, the incorrect assertion that plaintiff's complaint is based only on GoDaddy's actions as the registrar of the cybersquatting domain name "petronastower.net." To the contrary, and as spelled-out in the complaint, GoDaddy is far from the passive, neutral domain name registrar it claims to be. Instead, GoDaddy's liability arises both from its own, direct infringement of plaintiff's "PETRONAS" mark as well as its critical support of, and—by its own admission—willful blindness to, the continued infringement of plaintiff's mark by the registrant o the "petronastower.net" domain name.

With respect to contributory cybersquatting—a cause of action that GoDaddy mentions fleetingly in a single footnote—plaintiff's complaint details facts showing both GoDaddy's control over the cybersquatting domain name "peteronastower.net" and GoDaddy's *refusal to even investigate*, much less take any action to stop, the undisputed infringement of plaintiff's trademark by the registrant of the "petronastower.net" domain name.

Similarly, GoDaddy ignores the facts in the complaint that establish GoDaddy's direct liability for cybersquatting, including GoDaddy's bad faith intent to profit from plaintiff's mark by using the "petronastower.net" domain name to divert customers from plaintiff's legitimate website. GoDaddy also ignores all of the facts in the pleadings which establish that GoDaddy's use of the Infringing Domain Name was made pursuant to a license—implied or otherwise—from the registrant.

The complaint also sets forth facts showing that GoDaddy's liability for federal trademark infringement and dilution of the Petronas trademark arises from GoDaddy's use of the "petronastower.net" domain name. Rather than address these factual allegations, GoDaddy

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

1

moves to dismiss Counts Two, Three and Four by largely repeating and recasting its unfounded contention that the pleadings in this case are limited to GoDaddy's purported actions as the passive registrar of the "petronastower.net" domain name.

When the facts set forth in the complaint and the reasonable inferences that flow from them are reviewed under the liberal Rule 12 standard for a motion to dismiss, they support both plaintiff's federal trademark causes of action as well as the related state law claims. Even if more detail were required under Rule 8—which it is not—amendment of the complaint should be freely granted for a number of reasons, not the least of which are that a deadline for amending the pleadings in this case has not been set and that defendant would suffer no conceivable prejudice from such an amendment. As such, defendant's motion to dismiss should be denied in its entirety but, if it is not, leave to amend should be freely granted. And, in either event, GoDaddy's strident, unsupported, and at best premature motion for sanctions should be denied outright.

## II. ARGUMENT

Although GoDaddy begins its motion with a predictable recitation of the well known legal standard for a motion to dismiss under Rule 12, nowhere in its motion does GoDaddy show that plaintiff's complaint fails allege "enough facts to state a claim to relief that is *plausible on its face*" or that the allegations in the complaint are not "enough to raise *a right to relief above the speculative level*," as the Supreme Court articulated the standard for a Rule 12 dismissal in *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007) (emphasis added).

Instead, GoDaddy ignores and mischaracterizes the allegations in the complaint in a failed attempt to show that "plaintiff does not allege that GoDaddy acted as anything other than a passive registrar with respect to the domain name" and, as such, that GoDaddy enjoys "a clear

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

2

'safe harbor from liability for registering an infringing domain name.'" Motion at 3:23-24 and 4:16-17.

With respect to the alleged "safe harbor," nowhere does the complaint state that plaintiff's claims for relief are based on GoDaddy's liability for registering the "petronastower.net" domain name—nor could they. As GoDaddy itself admits, GoDaddy *did not register* the "petronastower.net" domain name—the domain name was registered instead by an unknown registrar and transferred to GoDaddy on April 1, 2007. Docket No. 13 (Lewis Decl. ¶ 7(a)). Thus, none of the claims against GoDaddy could be based solely on an allegation that GoDaddy registered the "petronastower.net" domain name or that GoDaddy acted as "a passive registrar" of the domain name. As such, GoDaddy's attempt to invoke the purported "ACPA safe harbor for registrars" is unavailing and provides no basis on which to grant its motion to dismiss.

Rather than alleging liability based on the registration of the "petronastower.net" domain name, the complaint sets forth facts establishing that GoDaddy's use of the "petronastower.net" domain name and its contribution to the registrant's use of the "petronastower.net" domain name make it liable for the causes of action in plaintiff's complaint. Because GoDaddy fails to show that the actual facts in plaintiff's complaint fail to establish GoDaddy's liability, GoDaddy's motion should be denied.

### A. GoDaddy's Motion Essentially Ignores Plaintiff's Claim for Contributory Cybersquatting And Offers No Basis On Which To Dismiss That Claim

GoDaddy's motion should be denied with respect to plaintiff's contributory cybersquatting claim because, in the single footnote GoDaddy devotes to that claim, GoDaddy contends only that the "mention of cybersquatting [in the complaint] is meaningless, and should

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

be disregarded." Motion at 9:24-27. Assuming for the sake of argument that this were a basis on which a cause of action could be dismissed under Rule 12(c)—which it is not—GoDaddy utterly fails to address any of the facts in the complaint that support plaintiff's contributory cybersquatting claim.

In order to establish a cause of action for contributory cybersquatting, a plaintiff must show that defendant (1) continued to supply the means of infringement to the infringer (2) with knowledge that those means are being used to infringe the plaintiff's mark. *Perfect 10 v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) ("When the alleged infringer supplies a service [such as a website] rather than a product, the Court must consider the extent of control exercised by the defendant over the third party's means of infringement."); *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp.2d 635, 646 (E.D. Mich. 2001) (applying principles of contributory trademark infringement to contributory cybersquatting).

### 1. GoDaddy Controlled The Means Of The Registrant's Cybersquatting

The complaint and the relevant pleadings in this case set forth facts that meet the "control" element of plaintiff's claim for "Contributory Cybersquatting Under 15 U.S.C. § 1125(d)" as set forth in Count One of the complaint. As an initial matter, the complaint alleges that the "registration, use, or trafficking in the Infringing Website and Infringing Domain name constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiff to relief" (Complaint ¶ 34). It is thus a reasonable inference—which GoDaddy does not dispute—that the registrant of the "petronastower.net" domain name committed cybersquatting with respect to the "petronastower.net" domain name.

Given this reasonable inference, the allegations in the complaint regarding GoDaddy's actions with respect to the "petronastower.net" domain name establish GoDaddy's control over

the means of registrant's cybersquatting. In particular, the complaint alleges that GoDaddy "*used* the Infringing Website to divert customers from PETRONAS's website to the Infringing Website accessible under the infringing domain name." Complaint ¶ 33. This allegation, when read in a light most favorable to plaintiff, demonstrates that GoDaddy controls the registrant's means of cybersquatting by making the infringing website accessible through the infringing "petronastower.net" domain name. In addition, the complaint states that GoDaddy's "*use* . . . of the Infringing Website and Infringing Domain Name constitutes cybersquatting in violation of 15 U.S.C. § 1125(d)," and thus explicitly ties plaintiff's allegations of cybersquatting to GoDaddy's forwarding of visitors from the "petronastower.net" domain name to the infringing pornographic website. Complaint ¶ 34. Similarly, the complaint alleges that "the website *affiliated* with the Infringing Domain Name, (the 'Infringing Website') found at 'petronastower.net' contains highly offensive, obscene, and pornographic material" (Complaint ¶ 16), which further demonstrates GoDaddy's control over the registrant's cybersquatting through GoDaddy's acts of affiliating the infringing domain name with the infringing website. These allegations in the complaint firmly establish GoDaddy's control over the means of registrant's cybersquatting through its use and affiliation of the "petronastower.net" domain name, without which the registrant could not conduct its infringing cybersquatting.

      GoDaddy's use of the infringing domain name "petronastower.net" to provide access to the infringing, pornographic website is precisely the type of control required to establish the first element of a cause of action for cybersquatting. *Solid Host NL. v. Namecheap, Inc.*, 652 F. Supp.2d 1092, 1115-16 (C.D. Cal. 2009) (denying registrar's motion to dismiss a contributory cybersquatting claim and finding that, had the defendant domain name registrar simply "returned the [infringing] domain name to the [trademark holder], [the cybersquatter's] illegal activities

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

would have ceased" and, as a result, the defendant domain name registrar's "ability to monitor and control the instrumentality used by Doe to engage in cybersquatting satisfies the direct control and monitoring requirement necessary to plead a contributory liability claim."). Accordingly, like the landlord of a flea market in which counterfeit goods are being sold, GoDaddy "provided the very medium" in which the cybersquatting occurs such that, if GoDaddy had stopped providing its services to the cybersquatting registrant of "petronastower.net," the cybersquatter "would have been forced to shut down completely." *Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp.2d 678, 689-90 (D. Md. 2001) (holding that contributory cybersquatting occurs where, had the defendant ceased providing its services related to the infringing domain name, the cybersquatting would have ceased.).

It is GoDaddy's use of the infringing "petronastower.net" domain name (Complaint ¶ 34) to make the infringing pornographic website "accessible under the infringing domain name" (Complaint ¶ 33) that provide the basis in the complaint for plaintiff's claim for contributory cybersquatting. In addition to the complaint itself, the documents cited in the complaint further detail GoDaddy's control over the means of the cybersquatting at issue in this case. In particular, the complaint references the signed declaration Petronas provided to GoDaddy on December 16, 2009 informing GoDaddy of registrant's cybersquatting domain name. Complaint ¶ 20. That declaration was made as part of a "Request for Trademark Claims" drafted by GoDaddy and which sets forth GoDaddy's rights to take certain actions with respect to infringing domain names, including that GoDaddy may "lock down the posting party's domain name(s), redirect the posting party's DNS, and/or if it is solely stored on a GoDaddy.com, Inc. server, temporarily remove or deny access to the challenged material." Docket No. 3 (Clark Decl. Ex. B). GoDaddy's ability to take any of these actions with respect to the "petronastower.net" domain

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

6

name establishes its control over the means of—and ability to stop—the registrant's cybersquatting, thus satisfying the "control" element of plaintiff's contributory cybersqautting claim.

Moreover, GoDaddy's own pleadings in this case demonstrate its control over the means of the registrant's cybersquatting. For example, GoDaddy submitted a declaration from its Deputy General Counsel, Kelly Lewis, which provides further details about GoDaddy's use of the infringing domain name. Docket No. 13 (Lewis Decl.). For example, the Lewis declaration explains how GoDaddy did not, in fact, register the "petronastower.net" domain name and how instead the "domain name was transferred by the registrant from another registrar to GoDaddy." Docket No. 13 (Lewis Decl. ¶ 7(a)). Moreover, the Lewis declaration provides details about the specific services GoDaddy provides to its registrant-customers, including the registrant of the "petronastower.net" domain name, beyond the mere maintenance of a domain name registration. In particular, the Lewis declaration explains that "GoDaddy provides registrants with an on-line 'dashboard,' allowing them to manage their domain names, including pointing their domain names to their websites, if they have one, or forwarding users who click on the domain name to another website." Docket No. 13 (Lewis Decl. ¶ 7). Through GoDaddy's "online dashboard" service, the registrant of "petronastower.net" instructed GoDaddy to "implement a forwarding option directing anyone clicking on <www.petronastower.net> to be forwarded to a website [*i.e.* the infringing website] that is not hosted by GoDaddy." *Id* at 7(b).

When the short plain statement in the complaint setting forth plaintiff's contributory cybersquatting claim, as bolstered by the further facts contained in the pleadings in this case, is considered under the lenient Rule 12 and Rule 8 standards, there can be little doubt that the "monitoring and control" element of plaintiff's cause of action for cybersquatting has been met.

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

7

*Erickson*, 551 U.S. at 94 (reversing affirmance of the grant of a motion to dismiss where plaintiff "bolstered his claim by making more specific allegations in documents attached to the complaint and in later filings.").

## 2. GoDaddy Had Knowledge Of The Registrant's Cybersquatting

GoDaddy does not allege—nor could it—that it did not have knowledge of the infringing domain name or that the complaint fails to adequately allege such knowledge. In particular, plaintiff's complaint alleges that:

- "Beginning on or about November 26, 2009, PETRONAS contacted GoDaddy repeatedly to inform it of the unauthorized use of the "PETRONAS" mark in connection with the 'petronastower.net' in the infringing domain name, that highly offensive, obscene, and pornographic material was being displayed on the Infringing Website associated with the Infringing Domain Name, and requested as GoDaddy cease its direct and contributory infringement of Plaintiff's mark." Docket No. 1 (Complaint ¶ 17).

- "On December 14, 2009, PETRONAS contacted GoDaddy via telephone to inform it that the Infringing Domain Name and offensive Infringing Website remained active, and requested that GoDaddy cease its direct and contributory infringement of plaintiff's mark." Docket No. 1 (Complaint ¶ 19).

- "On December 16, 2009, PETRONAS again contacted GoDaddy to provide formal Notice of Trademark Infringement and to request that the Infringing Website be disabled." Docket No. 1 (Complaint ¶ 20).

GoDaddy also does not allege that the notice plaintiff provided was somehow insufficient to place it on notice of the infringing domain name. Indeed, the formal notice of trademark

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

8

infringement provided by plaintiff to GoDaddy and referenced in Paragraph 20 of the complaint contained all of the information *required by GoDaddy itself* under its "Copyright and Trademark Infringement Policy." Docket No. 3 (Clark Decl. Ex. B).

Even if GoDaddy were to contend that it lacked knowledge of the infringing domain name, such a contention would be unavailing because GoDaddy does not deny that *it did not take any action with respect to the infringing domain name, including any investigation of whether it did in fact infringe.* Docket No. 1 (Complaint ¶ 18; Answer ¶ 18). *Solid Host*, 652 F. Supp.2d at 1116 (denying a motion to dismiss a claim for contributory cybersquatting where plaintiff provided to defendant a declaration setting forth the details of the infringing domain name and defendant did not investigate.) It is well-settled that "willful blindness is inexcusable under contributory infringement law" and exposes a defendant to liability as though it were fully aware of the direct infringement. *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1148 (7th Cir. 1992).

Because the pleadings in this case establish GoDaddy's control over the means of infringement by the cybersquatting domain name and the infringing website, as well as GoDaddy's undisputed knowledge thereof, GoDaddy's motion to dismiss should be denied as to plaintiff's claim for contributory cybersquatting.

> **B. GoDaddy Is Directly Liable For Cybersquatting Based On Its Use Of The Infringing Domain Name To Divert Consumers To The Infringing Website With The Bad Faith Intent To Profit From Plaintiff's Trademark**

Defendant's motion to dismiss plaintiff's claim for direct cybersquatting is based on two extremely limited and unsupported interpretations of the allegations in the complaint. Accordingly, and like GoDaddy's motion to dismiss with respect to plaintiff's claim for

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

9

contributory cybersquatting, GoDaddy's motion to dismiss should be denied as to direct cybersquatting as well.

### 1. GoDaddy Was At Least Impliedly Licensed To Use The Infringing Domain Name

Defendant interprets the facts in the complaint entirely in its favor to argue that plaintiff has failed to allege that GoDaddy "used" the infringing domain name in the manner required to establish liability under the Anitcyberpiracy Statute, 15 U.S.C. § 1125(d). According to the statute, a defendant is liable for the "use" of an infringing domain name only if it is the "domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D).

Here, the pleadings set forth facts which, if accepted as true and construed in a light most favorable to plaintiff, demonstrate that GoDaddy acted as the domain name registrant's licensee when GoDaddy "used" the infringing domain name. *Wang Labs, Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed. Cir. 1997) (an implied license arises upon the "grant of consent or permission to make, use, or sell: i.e., a license"). Specifically, and as noted above, the complaint alleges that GoDaddy "*used* the Infringing Website to divert customers from PETRONAS' website to the infringing website accessible under the Infringing Domain Name" and that "the *use* . . . of the Infringing Website and Infringing Domain Name constitutes cybersquatting in violation of 15 U.S.C. § 1125(d)." Complaint ¶¶ 33 and 34. The complaint thus makes clear that it is GoDaddy's "use" of the infringing domain name that forms the basis for plaintiff's claim of direct cybersquatting against GoDaddy in the complaint. The complaint further alleges that GoDaddy is the "registrar," not the "registrant," of the infringing "petronastower.net" domain name. Complaint ¶ 15. Because it is reasonable to infer that GoDaddy used the Infringing Domain Name with the permission of the registrant—who is, after

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

10

all, GoDaddy's customer—it is likewise reasonable to infer that GoDaddy's use of the Infringing Domain Name was made under a license, implied or otherwise, from the registrant. Accordingly, when the allegations of the complaint are construed in a light most favorable to it, plaintiff's complaint establishes that GoDaddy's actions meet the criteria for the "use" of a domain name under the Cyberpiracy Statute.

Moreover, the reasonable inference that GoDaddy's use of the Infringing Domain Name was carried out under a license from the registrant is further bolstered by the declaration of GoDaddy's deputy general counsel, Kelly Lewis. Docket No. 13. In his declaration, Mr. Lewis describes how GoDaddy's use of the Infringing Domain Name is carried out as part of GoDaddy's "online 'dashboard'" service that GoDaddy provides to its "registrant-customers" such as the registrant in this case. Docket No. 13 (Kelly Decl. ¶ 7). Specifically, Mr. Lewis explains that "GoDaddy provides its registrant-customers with an online 'dashboard,' allowing them to manage their domain names, including pointing their domain names to their websites, if they have one, or forwarding users who click on the domain name to another website." *Id*. According to Mr. Lewis, this is precisely what the registrant of the infringing domain name did when, "on or about May 2, 2009, the registrant, through his online dashboard, implemented a forwarding option, directing anyone clicking on <petronastower.net> to be forwarded to a website not hosted by GoDaddy." *Id.* at 7(b). Given the registrant's implementation of the "forwarding option" through GoDaddy's "online dashboard," it is more than reasonable to infer—and GoDaddy does not argue to the contrary—that GoDaddy's use of the Infringing Domain Name to carry out this domain name "forwarding" was done under an implied license granted by the registrant to GoDaddy.

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

11

### 2. GoDaddy Used The Infringing Domain Name With A Bad Faith Intent To Profit From The Mark

Defendant makes no real attempt to show that plaintiff's allegation that GoDaddy used the infringing mark with the "bad faith intent to profit from the mark," as required by the Anticyberpiracy Statute, is legally insufficient. Instead, GoDaddy asserts only that plaintiff's allegation in the complaint that GoDaddy "used the Infringing Website in bad faith and with a bad faith intent to profit from the goodwill plaintiff established in its 'PETRONAS mark" is a "rote legal conclusion." Motion at 7:11-12. Even if GoDaddy offered any case law or analysis to support its argument that this allegation was a mere "rote legal conclusion"—which it does not—GoDaddy ignores the other allegations in the pleadings which show that GoDaddy used in the domain name with a bath intent to profit from GoDaddy's mark.

As an initial matter and as noted above, the complaint alleges that GoDaddy used the Infringing Domain name to "divert customers from PETRONAS's website to the infringing domain name accessible under the infringing domain name." Complaint ¶ 33. GoDaddy does not allege—nor could it—that this allegation is untrue and, significantly, GoDaddy does not offer any alternative reason for its use of the Infringing Domain Name. Nor does GoDaddy dispute that, under the Antipiracy Statute, a person's "intent to divert customer's from the mark owner's online location to a site accessible under the [infringing domain name]" is a factor a Court may consider in determining whether that person has the requisite "bad faith intent" required to establish direct cybersquatting. 15 U.S.C. § 1125(d)(1)(B)(i)(V). Tellingly, GoDaddy does not even mention this factor, or any of the others, that a Court may consider in

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

determining whether GoDaddy has the required "bad faith" intent to profit from its use of plaintiff's mark.

Moreover, the other allegations in the complaint beyond the single example cited in GoDaddy's brief support the reasonable inference that GoDaddy's use of the infringing domain name was made with the "bad faith intent" to profit from plaintiff's mark. Indeed, as set forth in the complaint, GoDaddy *refused to take any action* with respect to the infringing domain name on the grounds that it simply does not become involved trademark allegations regarding its customers' domain names. Docket No. 4 (Complaint ¶¶ 18, 21, and 23). Defendant's refusal to even investigate or otherwise process claims of trademark infringement related to its customers' domain names, including the infringing domain name in this case, supports the inference that defendant's use of, and refusal to disable, the Infringing Domain Name was made with a bad faith intent to profit from plaintiff's trademark.

In summary, the allegations and reasonable inferences in the complaint related to GoDaddy's liability for direct cybersquatting establish (1) that GoDaddy "used" the Infringing Domain Name under a license (implied or otherwise) from the registrant and (2) that GoDaddy did so with a "bad faith intent" to profit from plaintiff's mark. Because these are the only two grounds on which GoDaddy challenges plaintiff's direct cybersquatting cause of action in Count One, its motion to dismiss as to that cause of action should be denied.

### C. Plaintiff's Causes Of Action For Trademark Infringement And Dilution Are Not Based On The Allegation That Defendant Merely Registered The Infringing Domain Name

GoDaddy moves to dismiss plaintiff's federal trademark infringement and dilution causes of action by restating and recycling its argument that registrars like GoDaddy cannot be held liable for their "domain name registration activities." Motion at 11:12-13. GoDaddy relies

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

13

heavily on *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp.2d 958 (C.D. Cal. 1997), to argue it cannot be liable for trademark infringement and dilution because "something more that the registration of the domain name is required before the use of a domain name is infringing." *Id*. at 957.

Contrary to the assertions in GoDaddy's motion, however, plaintiff does not allege that defendant's liability is based in whole or in part on the mere registration of the Infringing Domain Name. Indeed, as set forth above, GoDaddy *did not even register the infringing domain name* and nothing in the plaintiff's complaint suggest that GoDaddy's liability somehow arises from its non-existent actions in connection with the registration of the "pertronastower.net" domain name. Docket No. 13 (Lewis Decl. ¶ 7).

In an attempt to re-write the complaint to bring it within *Lockheed's* purported "safe harbor" for registrants, defendant contends that "here, GoDaddy is alleged to have provided the exact same function as the registrar in *Lockheed*." Motion at 11:8-10. This allegation is blatantly and demonstrably false. To the contrary, plaintiff's complaint states explicitly that GoDaddy "*used* the infringing domain name to divert consumers from PETRONAS' website to the Infringing Website accessible under the infringing domain name." Docket No. 1 (Complaint ¶ 33). As the Lewis declaration further explains, this diversion of customers to the infringing website was achieved through GoDaddy's "forwarding" function which it makes available to all of its "customer-registrants" as part of its "online dashboard." Docket No. 13 (Lewis ¶ 7). This "use" by GoDaddy of the infringing domain name is categorically different than the actions described in *Lockheed*, where the defendant registrar's role was limited to the mere "translation of the domain name combination to the registrant's IP address" in response to the entry of a registered domain name combination by an internet user. *Lockheed,* 194 F.3d at 984.

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

14

Because GoDaddy's motion to dismiss as to plaintiff's claims in Counts Two, Three, and Four for direct and contributory trademark infringement and dilution is based solely on its wholesale and improper re-writing of plaintiff's complaint in a failed attempt to invoke *Lockheed's* "safe harbor" for domain name registrar's, GoDaddy's motion to dismiss should be denied as to those counts in the complaint.

### D. Plaintiff's State Law Claims Should Not Be Dismissed Because The Underlying Federal Claims Should Not Be Dismissed

GoDaddy does not independently challenge the sufficiency of the plaintiff's state law claims in Counts Five and Six of the complaint and instead rests its motion to dismiss those counts on the same faulty arguments on which it based its motion with respect to the federal claims. Because GoDaddy's motion as to the federal claims must fail, as set forth above, GoDaddy's motion as to the state law claims must fail as well.

### E. Plaintiff's Motion For Attorneys' Fees Is Baseless

GoDaddy moves for attorneys' fees and costs as the "prevailing party" on the grounds that this is an "exceptional case" under 15 U.S.C. § 117(a)(3). Plaintiff's motion, at best, strains credibility and should be denied outright. First, the section on which it relies to claim entitlement to attorneys' fees and costs, 15 U.S.C. § 117(a)(3), states on its face that it applies only "*when* a violation of any right of the registrant . . ." has been found. Here, there has been neither a finding of a violation, or of no violation, and 15 U.S.C. § 117(a)(3) is thus plainly inapplicable. Second, plaintiff's reliance on *Guichard v. Universal City Studios, L.L.L.P.*, No. C-06-06392 JSW, 2008 WL 2220434 (N.D. Cal. 2008) is unwarranted and demonstrates the sheer absurdity of its motion for fees and costs. In that case, the district court awarded fees and costs after plaintiff's claims had been *twice* dismissed by the district court and the dismissals had been upheld on appeal to the Ninth Circuit. *Id.* *Guichard* is thus at best inapplicable to this case

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

15

and, at worst, demonstrative of the frivolousness and vexatious nature of GoDaddy's motion for fees and costs.

Third, GoDaddy's allegation that this action is "groundless" and "unreasonable" is based on nothing more than the arguments it makes in support of its motion to dismiss. Because those are arguments are unavailing for the reasons set forth above, GoDaddy's motion for fees and costs should be denied.

### F. Leave To Amend Should Be Granted As To Any Claim Dismissed As A Result Of GoDaddy's Motion

In the event any of plaintiff's claims are dismissed as a result of defendant's motion, plaintiff should be given leave to amend its complaint. It is axiomatic that leave to amend should be freely and liberally granted. *Fed. R. Civ. P. 15(a)(2); Lockheed*, 194 F.3d at 986. The Ninth Circuit has set forth four factors a district court should consider in deciding whether to grant leave to amend, all of which would support the grant of leave to amend in this case. *Id.* First, the plaintiff in this case would be guilty of no bad faith in connection with any potential amendment and such an amendment would merely serve the interests of justice in this case to overcome any technical or procedural defects in the pleadings. *Id.* Second, there could be no allegation of delay given the early stage of this case, especially in light of the absence of the establishment by the Court of a deadline for the amendment of pleadings. *Id.* Indeed, GoDaddy's own proposed deadline for the amendment of the pleadings was August 29, 2010—a date which has not yet passed and which the Court did not adopt. Docket No. 42 at 5:18-22. Third, it is hard to conceive of any prejudice to GoDaddy from an amendment given the absence of any discovery or any other substantive activity in this case up to this point. *Id.* Fourth, even if this Court were to find that additional details supporting the allegations in the complaint were warranted, nothing in GoDaddy's motion suggests, much less establishes, that amendment of the

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

1 pleadings to satisfy Rule 8 would be futile. Accordingly, and although defendant's motion fails
2 to set forth any grounds that would support the dismissal of any of the counts of the complaint,
3 plaintiff should be granted leave to amend to the extent the motion is granted as to any of
4 plaintiff's claims.

I. CONCLUSION

For the reasons set forth above, GoDaddy's motions to dismiss and for attorneys fees and costs should be denied in their entirety.

Respectfully Submitted,

Dated: August 18, 2010                    Law Offices of Perry R. Clark


                                          ___/S/_____
                                                  Perry R. Clark

OPPOSITION TO MOTION FOR JUDGMENT
AND FOR FEES AND COSTS
Case No.: C09-5939 PJH

17