1  Perry R. Clark (California Bar No. 197101)
   Law Offices of Perry R. Clark
2  3457 Cowper St.
   Palo Alto, CA 94306
3  Telephone: (650) 248-5817
   Facsimile: (650) 618 8533
4  E-Mail: perry@perryclarklaw.com

5  Counsel for Plaintiff
   PETROLIAM NASIONAL BERHAD ("PETRONAS")

6

7

8              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
9                 OAKLAND DIVISION

10

11 PETROLIAM NASIONAL BERHAD          )  Case No.: C09-5939 PJH
   ("PETRONAS")                       )
12                      Plaintiff,    )  OPPOSITION TO CORRECTED MOTION
                                      )  TO DIMISS FIRST AMENDED
13          vs.                       )  COMPLAINT
                                      )
14 GO DADDY.COM, INC.,                )  Date: March 9, 2011
                         Defendant.   )  Time: 9:00 a.m.
15                                    )  Courtroom 3
                                      )  Judge: Hon. Phyllis J. Hamilton
16 _____  )

17

18

19

20

21

22

23

24
   OPPOSITION TO GODADDY'S MOTION
   TO DISMISS FIRST AMENDED COMPLAINT
   Case No.: C09-5939 PJH

1

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.   Plaintiff's Claims Are Not Barred By The ACPA's Safe Harbor From Damages For A Registrar's "Registration" Of A Domain Name ....................................................... 2

II.  Count I For Direct Cybersquatting Should Not Be Dismissed Because The Complaint Adequately Pleads "Use" and "Bad Faith Intent to Profit" ........................................... 7

     A.  The Complaint Alleges GoDaddy "Used" The Domain Names In Violation of the ACPA ........................................................................................... 8

     B.  The Complaint Pleads Enough Facts To State A Claim Based On GoDaddy's "Bad Faith Intent To Profit From The Use Of Plaintiff's Mark" .......................... 9

III. Count II For Contributory Cybersquatting Should Not Be Dismissed Because The Allegations In The Complaint Establish "Control and Monitoring" And "Knowledge" ................................................................................................. 15

CONCLUSION ...................................................................................................... 19

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

i

1

## TABLE OF AUTHORITIES

2     **CASES**

3   *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) ............................................. 16

4   *DSPT International, Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010) .............................. 8

5   *Interstellar Starship Svcs., Ltd. v. Tchou*, 304 F.3d 936, 946 (9th Cir. 2002) ............................ 13

6   *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009) .................................... 13

7   *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th 1999)............................ 4

8   *Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp.2d 648, 655 (N.D. Tex. 2001) .. 4

9   *Lockheed v. Network Sols., Inc.*, 985 F. Supp. 949, 961 (C.D. Cal. 1997).................................. 5

10  *Microsoft Corp. v. Shah*, 2011 U.S. Dist. LEXIS 2995, *8-9 .................................... 12

11  *Sagana v. Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004) ........................................... 11

12  *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp.2d 1092, 1104 (C.D. Cal. 2009)...................... 4

13  *Verizon California, Inc. v. Onlineic, Inc.*, 647 F. Supp.2d 1110, 1125 (N.D. Cal. 2009) ............. 3

14  *Webquewst.com, Inc. v. Hayward Indus.*, 2010 U.S. Dist. LEXIS 118188, *6 (E.D. Cal. 2011)  16

15      **STATUTES**

16  15 U.S.C. § 1125(d)(1)(D)..................................................................................9

17  15 U.S.C. § 1125(d)(1)(A)(i)...........................................................................10, 11

18      **TREATISES**

19  4 McCarthy on Trademarks and Unfair Competition § 25:73.40 (4th ed. 2010).......................................3

20

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

1

**<u>INTRODUCTION</u>**

2  GoDaddy's motion to dismiss reveals that its reliance on the so-called safe harbor

3  defense in the America Cybersquatting Protection Act ("ACPA"), 15 U.S.C. § 1114(2)(D)(iii), is

4  based entirely on a misrepresentation of what is shielded from liability under the statute.  In

5  particular, there is absolutely no legal support for GoDaddy's contention that the ACPA safe

6  harbor shields registrars from damages not only for the "registration" of a domain name for a

7  registrant customer <u>but also</u> for "routing internet traffic to a website identified by the registrant."

8  GoDaddy has based virtually its entire defense of this case on its assertion that the ACPA's safe

9  harbor covers "routing" internet traffic but there can be no real dispute that GoDaddy's argument

10  is, at best, overreaching.

11  GoDaddy's argument related to Plaintiff's claim for direct cybersquatting raises an issue

12  that is largely unsuitable for resolution on a motion to dismiss, namely, whether the Complaint

13  sufficiently alleges GoDaddy's "bad faith intent."  Because GoDaddy almost completely ignores

14  the actual facts pled in Plaintiff's Complaint and applies an improperly narrow legal standard for

15  what constitutes bad faith, GoDaddy's motion offers nothing that would support a dismissal of

16  Plaintiff's direct cybersquatting claim.

17  As for Plaintiff's claim for contributory cybersquatting, GoDaddy's arguments amount to

18  little more than several completely incorrect assertions that Plaintiff's Complaint fails to allege

19  that GoDaddy's conduct is any different than the conduct of the registrar that was found not to

20  support a finding of contributory trademark infringement in the *Lockheed* Case.  Because these

21  allegations are demonstrably false, there is nothing in GoDaddy's motion that would warrant

22  dismissing Plaintiff's claim for contributory cybersquatting.

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

1

**ARGUMENT**

2
3

I.      **Plaintiff's Claims Are Not Barred By The ACPA's Safe Harbor From Damages For A Registrar's "Registration" Of A Domain Name**

4

GoDaddy's primary argument here is the same argument it made in its previous motion

5   for judgment on the pleadings, namely, that it cannot be liable under the ACPA because it acted

6   as nothing more than the registrar of the domain names and, as a result, it is shielded from

7   liability under the ACPA's safe harbor.  This argument fails, however, because it based on the

8   legally incorrect assertion that the ACPA safe harbor shields registrars from damages ***not only***

9   for the actual registration of a domain name for a registrant customer ***but also*** for "routing"

10  internet traffic to a website chosen by the registrant.  Because GoDaddy's motion to dismiss

11  based on the ACPA safe harbor depends entirely on construing the scope of the safe harbor to

12  include not only the "registration" of a domain name but also "routing" a domain name, and

13  there is absolutely no legal basis that would support such a construction, GoDaddy's motion to

14  dismiss should be denied as to the ACPA safe harbor.

15          As an initial matter, GoDaddy's argument that the term "registration" in the ACPA also

16  means "routing" internet traffic to a website chosen by the registrant" is utterly unsupported by

17  the plain language of the ACPA which states that "a domain name registrar . . . shall not be liable

18  for damages under [the ACPA] for the registration or maintenance of a domain name for

19  another."  15 U.S.C. § 1114(2)(D)(iii).  GoDaddy points to nothing in the actual language of the

20  ACPA—and there is nothing—that would suggest the term "registration" means anything other

21  than the actual registration of a domain name for a registrant customer—much less that the term

22  "registration" should be construed to mean "routing" internet traffic.

23          Rather than base its argument on the actual language of the ACPA, GoDaddy bases its

24  argument that "registration" includes "routing" by citing to a statement in a treatise that "the

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

2

1    ACPA effectively codifies the pre-2000 case law . . . which held that a registrar that reserved or

2    registered an allegedly infringing domain name was not responsible as a direct or contributory

3    infringer."  Mtn. at 6:6-8 (*citing* 4 McCarthy on Trademarks and Unfair Competition § 25:73.40

4    (4th ed. 2010)).  GoDaddy then contends that "cases interpreting the ACPA safe harbor provision

5    have interpreted this language"—meaning the language from the treatise in the previous sentence

6    referring to "pre-2000 case law" and not a reference to the actual language in the ACPA—to

7    make the leap that the safe harbor also shields "passive" registrars "who merely register domain

8    names for registrant customers ***and*** route internet traffic to the website of registrant's choice."

9    Mtn. at 6. (emphasis added).

10          There is absolutely nothing in any of the three cases cited by GoDaddy that even comes

11   close to suggesting—as GoDaddy does—that the ACPA shields registrars "who merely register

12   domain names for registrant customers *and route internet traffic to the website of the registrant's*

13   *choice*."  Mtn. at 6:9-21 (emphasis added).  In fact, all three of the cases undermine GoDaddy's

14   position by stating specifically that the safe harbor in the ACPA applies *only* to a registrar's

15   actions of registering domain names.  Thus, in *Verizon California, Inc. v. Onlineic, Inc.*, Judge

16   Fogel held that the defendant "did not qualify for protection under the ACPA safe harbor

17   provision, which exempts a registrar from liability resulting from its registration of domain

18   names for others where the registrar is acting in a purely passive capacity."  *Verizon California,*

19   *Inc. v. Onlineic, Inc.*, 647 F. Supp.2d 1110, 1125 (N.D. Cal. 2009).  Similarly, in both of the

20   other two cases cited by GoDaddy, the Courts held the ACPA's safe harbor only applied to a

21   registrar's action that constituted the "registration" of a domain name, which the Courts defined

22   respectively as "accepting registrations for domain names from customers" and as "keeper of the

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH
                                                      3

1    registry." *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp.2d 1092, 1104 (C.D. Cal. 2009);

2    *Lockheed Martin Corp. v. Network Solutions, Inc.*, 141 F. Supp.2d 648, 655 (N.D. Tex. 2001).

3        GoDaddy's final attempt to establish that the ACPA safe harbor shields registrars from

4    liability for the registration of a domain name *and* the "routing of internet traffic to a website

5    identified by the registrant" is based on the Ninth Circuit's opinion in *Lockheed Martin Corp. v.*

6    *Network Sols., Inc.*, 194 F.3d 980, 984 (9th 1999) (the Ninth Circuit's opinion did not discuss the

7    ACPA because it was enacted in 2000 and the case was decided in 1999).  Contrary to

8    GoDaddy's assertions, however, nothing in the Ninth Circuit's opinion expands the ACPA safe

9    harbor to cover actions by a registrar to include "routing of [internet traffic] by IP address

10   alone." Mtn. at 7:21-23.  Instead, the Ninth Circuit in the *Lockheed* case simply affirmed the

11   District Court's grant of a domain name registrar's motion for summary judgment because "all

12   evidence in the record" established that the registrar was not liable for contributory infringement

13   as a matter of law.  *Lockheed*, 194 F.3d at 984.  Contrary to GoDaddy's suggestion, the holding

14   in *Lockheed* cannot as a matter of law categorically expand the scope of the ACPA's safe harbor

15   by altering the definition of the term "registration."  Instead, the Ninth Circuit's holding that the

16   District Court correctly granted summary judgment based on "all evidence in the record" can

17   have no application to a registrar's conduct other than what was established in the summary

18   judgment record.

19       And there is nothing in "all evidence in the record" on which the District Court granted

20   summary judgment that would suggest that the defendant registrar's conduct could be described

21   as anything other than the actual registration of domain names for its registrant customers and

22   that it had nothing at all to do with the "routing" of internet traffic to websites chosen by its

23   registrant customers.  In fact, the District Court's opinion in the *Lockheed* case states clearly that

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

1  the defendant domain name registrar did not perform any "routing" and "was not a part of the

2  process of linking domain names with potentially infringing resources such as Web sites."

3  *Lockheed v. Network Sols., Inc.*, 985 F. Supp. 949, 961 (C.D. Cal. 1997).  In addition, the

4  *Lockheed* Court simply could not have been any more clear as to what the registrar's functions

5  were and, perhaps more import, what those functions were not:

> NSI performs two functions in the domain name system.  First, it screens domain
> name applications against its registry to prevent repeated registrations of the same
> name.  Second, it maintains a directory linking domain names with the IP
> numbers of domain name servers.  The domain name servers, *which are outside of
> NSI's control*, connect domain names with internet resources such as Web sites
> and email systems."

13  *Lockheed Corp.*, 985 F. Supp. at 953.  In light of the District Court's detailed and clear

14  description of the conduct of the registrar which can leave no doubt that the registrar did not

15  perform the function of "routing internet traffic" as GoDaddy contends it did, the *Lockheed* case

16  offers no support for GoDaddy's position regarding the scope of the safe harbor.

17         Nonetheless, GoDaddy attempts to use *dicta* in the Ninth Circuit's opinion in the

18  *Lockheed* case to create confusion as to whether the ACPA safe harbor covers not only a

19  registrar's conduct in "registering" a domain name but also in "routing internet traffic to a

20  website using that domain name."  When analyzed in the entire context of the Ninth Circuit's

21  holding, however, it is clear that the Ninth Circuit plainly did not intend to expand the ACPA

22  safe harbor to include "routing" of internet traffic.

23         The issue in the *Lockheed* case was whether the District Court correctly granted summary

24  judgment dismissing Lockheed's claim against the defendant NSI, a domain name registrar, for

25  contributory trademark infringement arising out of NSI's service to its customers of registering

26  domain names which allegedly infringed Lockheed's marks.  *Lockheed*, 194 F.3d at 984.  In

27  particular, the Ninth Circuit had to decide whether NSI's registration service was sufficient to

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

5

1   establish that it "supplied a product to third parties" and thus could be liable for contributory

2   trademark infringement.  *Id*.  The question of whether NSI's registration service satisfied the

3   "supplied a product" test depended in turn on (1) whether it supplied the "means of

4   infringement" to the infringing third parties and (2) the extent to which NSI had the ability to

5   "directly control and monitor" the "means of infringement."  *Id*.

6          The *Lockheed* court held that the evidence in the summary judgment record was not

7   sufficient to establish that NSI "supplied the means of infringement."  The Court observed "that

8   NSI's role differs little from that of the United States Postal service: when an internet user enters

9   a domain-name combination, NSI translates the domain name combination and routes the

10  information to the corresponding computer."  *Id*.  The only reasonable interpretation of this use

11  of the word "routes" is that "the corresponding computer" is the computer into which the internet

12  user entered the domain name combination.  Indeed, it would make no sense for the information

13  that resulted from the translation of the domain name combination to be sent to any computer

14  other than the computer of the internet user who entered it in the first place.  And there is

15  certainly nothing to suggest that this means that NSI, the internet register, "routed" internet

16  traffic to a website selected by the registrant" as GoDaddy contends.

17         In the context of the same discussion, the Ninth Circuit's opinion also states that

18  "although NSI's routing service is only available to a registrant who has paid NSI's fee, NSI

19  does not supply the domain name combination any more than the Postal Service supplies a street

20  address by performing the routine service of routing mail."  *Id*.  This reference to "NSI's routing

21  service" is plainly a reference to NSI's service as a registrar of registering domain names for

22  domain name customers because this is the only service for which there is any indication that

23  NSI collects fees.  *Id*.  As such, there is nothing to suggest that this reference to "NSI's routing

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

6

1    service" should be interpreted to refer to anything other than the "registration" of domain names

2    by a registrar.  This is especially true in light of the Court's conclusion that the evidence

3    regarding "NSI's routing service" did not establish that NSI had the ability to directly control

4    and monitor its registrant customers' means of infringement of Lockheed's marks because:

5    
6            As the district court correctly observed, 'where domain names are used to
7            infringe, the infringement does not result from NSI's publication of the domain
8            name list, but from the registrant's use of the name on a web site or other internet
9            form of communication in connection with goods or services . . . _NSI's_
10           _involvement with the use of the domain names does not extend beyond_
11           _registration_.'

12   *Id.* (emphasis added).  Thus, when read in the full context of the Court's discussion in the

13   *Lockheed* opinion, the reference to "NSI's routing service" cannot support GoDaddy's argument

14   that the holding of *Lockheed* somehow expands the scope of the safe harbor of the ACPA to

15   include "routing" as alleged by GoDaddy.

16   **II.     Count I For Direct Cybersquatting Should Not Be Dismissed Because The**
17   **        Complaint Adequately Pleads "Use" and "Bad Faith Intent to Profit"**

18           GoDaddy does not dispute that all but two of the elements required to state a claim

19   against it for direct cybersquatting are met by the facts pled in Plaintiff's Complaint.  Under the

20   ACPA, the elements required to establish liability for direct cybersquatting are "(1) that the

21   defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or

22   confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with

23   bad faith intent to profit from that mark.'"  *DSPT International, Inc. v. Nahum*, 624 F.3d 1213,

24   1218-19 (9th Cir. 2010).  Here, GoDaddy contends that the only elements that are not adequately

25   pled are (1) GoDaddy's "use" of the domain names and (2) GoDaddy's "bad faith intent to profit

26   from the mark."

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH
                                              7

A.     **The Complaint Alleges GoDaddy "Used" The Domain Names In Violation of the ACPA**

In essence, and among other things, the Complaint alleges that GoDaddy used the domain names to direct Internet users to a pornographic website.  GoDaddy makes two unavailing arguments as to why this does not constitute "use" of a domain name under the ACPA.

First, GoDaddy contends that any action it may have taken with respect to directing internet users searching for the domain names to a pornographic website cannot constitute "use of the domain name under the ACPA" because GoDaddy was "merely following the automated instruction of the Registrant to point the Domain Names to a particular website."  Mtn. at 11.  Not surprisingly, GoDaddy offers no citation to any legal authority to support its assertion that "use" of a domain name does not constitute "use" under the ACPA so long as it is done at the instruction of a Domain Name registrant.  Indeed, it is hard to imagine why Congress would have intended to allow a domain name registrant to avoid liability simply by instructing someone else to use the mark to commit cybersquatting.

GoDaddy's second argument is that the Complaint fails to adequately plead that GoDaddy acted "as registrant's authorized licensee" when it used the marks.  Because Plaintiff does not contend that GoDaddy is the registrant, GoDaddy can only be liable under the ACPA for "using" the domain names if it was the "registrant's authorized licensee."  15 § 1125(d)(1)(D).  GoDaddy argues that the Complaint fails to adequately plead that it was the registrant's "authorized licensee" because "Plaintiff provides no basis for this allegation; there is no contractual arrangement alleged to constitute a license, and no conduct is indicated that would substantiate an implied license to 'use' the Domain Names."  Mtn. at 12.  This argument fails, however, because GoDaddy is simply incorrect that the Complaint "provides no basis for the allegation" that GoDaddy acted as registrant's "authorized licensee."  To the contrary, the

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

8

1    Complaint alleges that "on May 2009, the registrant used GoDaddy's online 'dashboard' to

2    instruct GoDaddy to use its Name Servers to direct anyone clicking on 'petronastower.net' to be

3    forwarded to a website containing highly offensive, obscene pornography."  Compl. § 44.  By

4    alleging that the registrant instructed GoDaddy to use the domain names, it provides a more than

5    reasonable basis on which to infer that the registrant granted a GoDaddy a "license" to use the

6    domain names and, thus, that GoDaddy was the registrant's "authorized licensee."  In any event,

7    GoDaddy fails to allege—much less demonstrate—that the facts pled in the Complaint are

8    insufficient to establish that it is at least "plausible" that GoDaddy acted as the registrant's

9    authorized licensee and, as a result, GoDaddy fails to demonstrate that dismissal under Fed. R.

10   Civ. P. 12(6) is appropriate.  *Lynn v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22

11   (9th Cir. 2008).

12       **B.    The Complaint Pleads Enough Facts To State A Claim Based On GoDaddy's**
13             **"Bad Faith Intent To Profit From The Use Of Plaintiff's Mark"**

14           Under the ACPA, an element necessary to establish direct cybersquatting is that the

15   defendant used the domain name with "a bad faith intent to profit from [the plaintiff's] mark."

16   15 U.S.C. § 1125(d)(1)(A)(i).  GoDaddy makes two arguments regarding "bad faith intent,"

17   neither of which has any merit.  First, GoDaddy alleges that the Complaint does not use the

18   words "bad faith" to describe GoDaddy's intent and, thus, should be dismissed for failure to

19   identify a cognizable legal theory of GoDaddy's liability because "bad faith" intent is a required

20   element of cybersquatting.  Second, GoDaddy contends that even if the Complaint had properly

21   identified "bad faith intent" as a legal theory, the facts pled in the Complaint are insufficient to

22   establish that GoDaddy had a "bad faith intent" to profit *from the plaintiff's mark* as opposed to

23   an intent to profit in general.

24       **1.    The Complaint Adequately Pleads GoDaddy's Bad Faith Intent**

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

1    GoDaddy's first argument regarding "bad faith" is that the Complaint should be

2    dismissed because "plaintiff does not even allege 'bad faith' standing alone" and "Plaintiff

3    merely alleges that GoDaddy had an 'intent to profit,' without bad faith."  Mtn. at 1:24-13:8.

4        While it is true that the Complaint does not use the words "bad faith" to described

5    GoDaddy's intent to profit, GoDaddy's argument that this warrants dismissal under Rule

6    12(b)(6) is frivolous.  It is well settled that "[a] party need not plead specific legal theories in the

7    complaint, so long as the other side receives notice as to what is at issue in the case."  *Sagana v.*

8    *Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004) ("We long ago rejected the argument that a specific

9    statute must be named, describing it is an attempt to evoke wholly outmoded technical pleading

10   rules.").  In any event, there can be no dispute that GoDaddy is on notice that Plaintiff's legal

11   theory is that GoDaddy acted with "bad faith" intent to profit from its mark because GoDaddy

12   argues—in the same section in its brief—that the facts alleged in the Complaint are insufficient

13   to show GoDaddy's "bad faith" intent to profit from the mark.

**2.     The Facts Pled Are Sufficient to Establish GoDaddy's Intent to Profit From The Mark**

16       GoDaddy's main argument regarding "bad faith intent" is that the Complaint fails to

17   allege facts sufficient to show that GoDaddy intended to profit "from the mark" as opposed to

18   showing that GoDaddy intended to profit from some other aspect of its conduct, such as profiting

19   from its domain name registration services.  This argument fails, however, because it relies on an

20   incorrect statement of the legal test for determining "bad faith intent," it ignores what is actually

21   pled in the Complaint, and it misapplies the standard applicable to a motion to dismiss.

22       As an initial matter, GoDaddy tries to use an overly narrow legal standard when it argues

23   that the Complaint should be dismissed because it "does not establish an 'intent to profit' *from*

24   *the goodwill of the trademark.*"  Mtn. at 13:9-10 (emphasis original).  GoDaddy's proposed legal

1    standard is not supported by the plain language of the ACPA, which states only that a defendant

2    must have "a bad faith intent to profit from the mark"—not the "goodwill of the trademark"—to

3    be liable for using a domain name that infringes a plaintiff's rights in the mark.  15 U.S.C. §

4    1125(d)(1)(A)(i).  In addition to the language of the statute, GoDaddy's proposed standard runs

5    counter to recent Ninth Circuit precedent interpreting the ACPA broadly and specifically

6    rejecting the notion that "intent to profit from the mark" requires a showing of "intent to profit

7    from the goodwill associated with the trademark."  *DSPT Int'l.*, 624 F.3d at 1219 (9th Cir. 2010)

8    (rejecting the argument that "'any intent to profit' under the act must be an intent to profit from

9    the goodwill associated with the mark."); *Microsoft Corp. v. Shah*, 2011 U.S. Dist. LEXIS 2995,

10   *8-9 (holding bad faith was established because "defendants sought to profit in bad faith by

11   teaching others how to trade off the widespread recognition of plaintiff's mark in order to drive

12   traffic to a particular website.").  In particular, the Ninth Circuit had made clear that although "a

13   remark in a Senate Committee report mentioning the goodwill associated with someone else's

14   trademark" may be part of the ACPA's legislative history, "the statute, like so many, is written

15   more broadly than what may have been the political catalyst that got it passed."  *DSPT Int'l.*, 624

16   F.3d at 1219 ("As in *Bosley Medical Inst. v. Kremer*, we conclude that the words of the statute

17   are broader than the political stimulus that led to its enactment.").

18       Here, it nonetheless matters little that GoDaddy fails to articulate the correct legal

19   standard because GoDaddy simply ignores the facts pled in the Complaint rather than try to show

20   they are legally insufficient to establish its bad faint intent under the ACPA.  In determining

21   whether a person has a bad faith intent, the ACPA enumerates nine nonexclusive factors for

22   courts to consider and, although it is not necessary "to march through these nine factors *seriatim*

23   because the ACPA itself notes that the use of the listed criteria is permissive," GoDaddy never

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

1   mentions any of them.  *Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009) (upholding

2   finding of bad faith intent where defendant "earned income when customers clicked on links

3   when visiting the Domain Names" used by defendant).  And while the nine factors are not

4   exhaustive, GoDaddy also does not address "the most important grounds for finding bad faith

5   [namely] the unique circumstances of the case."  *Interstellar Starship Svcs., Ltd. v. Tchou*, 304

6   F.3d 936, 946 (9th Cir. 2002).

7        GoDaddy does not address—much less analyze—the facts pled in the Complaint

8   establishing that GoDaddy intended to profit from Plaintiff's mark by using the domain names to

9   set a "precedent" that could be used to avoid the expense of cooperating with trademark owners

10  who provide notice to GoDaddy that their marks are being violated in the same manner that the

11  Complaint alleges Plaintiff's marks were violated.  Compl. ¶¶ 71-74.  In particular, the

12  Complaint alleges that GoDaddy used the domain names "petronastower.net" and

13  "petronastowers.net" to divert internet users to a pornographic website and did so with full

14  knowledge of Plaintiff's trademark rights.  Compl. ¶¶ 64-65.  The Complaint further alleges that

15  GoDaddy was not obligated to continue to use the domain names for this purpose under its

16  contract with the registrant or under its agreements with ICANN.  Compl. ¶¶ 66-67.  In addition,

17  the Complaint alleges that GoDaddy would have been shielded under the ACPA from any

18  liability if it had stopped using the domain names as alleged in the Complaint.  Compl.  Compl. ¶

19  68.  The Complaint also alleged that GoDaddy did not charge a fee to the registrant for

20  GoDaddy's use of the domain names and that its compensation from the registrant did not

21  depend on whether the domain names infringed Plaintiff's marks.  Compl. ¶¶ 69-70.

22        Moreover, the Complaint alleged that GoDaddy's ability to use Plaintiff's mark as

23  described in the Complaint was "crucial," "central," and/or "core" to its business because it

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

1   receives thousands of notice each year from trademark owners alleging that it is infringing their

2   marks by using them the same way it used Plaintiff's marks.  Compl. ¶71.  The Complaint

3   alleged further that GoDaddy refused to stop using the domain names as alleged in the

4   Complaint because it feared that if it did so, it could be compelled work with trademark owners

5   to protect their trademark rights and possibly discontinue it services.  Compl. ¶72.  The

6   Complaint also alleged that GoDaddy believed that it would decrease its revenues and/or profit if

7   it stopped its use of the domain names as described in the Complaint.  Compl. ¶73.  The

8   Complaint alleged that GoDaddy's use of the domains names was intended to profit from

9   Plaintiff's mark so that it could avoid the expense of dealing with other trademark owner's

10  Complaints about GoDaddy's use of their marks in manner similar to GoDaddy's use of

11  Plaintiff's mark.  Compl. ¶74.

12          As noted above, GoDaddy fails to mention any of the nine factors listed in the ACPA as

13  factors a Court may consider in determining whether a defendant had a bad faith intent to profit.

14  But even if it had, the factors that are applicable weigh in favor of a finding that GoDaddy acted

15  with the requisite bad faith intent.  The first four factors deal with any legitimate reasons

16  GoDaddy may have had to use the domain names *other than* to profit from Plaintiff's mark, such

17  as GoDaddy's own trademark or other intellectual property rights to the domain names.  15

18  U.S.C. §1125(d)(1)(b)(1).  GoDaddy offers no explanation for its use of the domain names and,

19  as such, all four of these factors weigh in Plaintiff's favor.

20          The only other factor that would apply to this case is the fifth factor—which examines

21  the defendant's "intent to divert customers from the mark owner's online location to a site

22  accessible under the domain name that could harm the goodwill represented by the mark"—and

23  also supports the conclusion that GoDaddy acted with bad faith.  15 U.S.C. §1125(d)(1)(b)(1).

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

1    The Complaint alleges that GoDaddy knew Plaintiff used its mark as an integral part of its own

2    domain names.  Compl. ¶ 64.  The Complaint also alleges GoDaddy knew that it was using the

3    domain names to divert internet users to a pornographic website that could and did harm the

4    goodwill associated with Plaintiff's mark.  Compl. ¶ 65.  In addition, the Complaint alleges that

5    GoDaddy continued to use the "petronastowers.net" domain name despite the fact that the Court

6    already had issued an order transferring the "petronastower.net" domain name to Plaintiff

7    because it was being used to violate Plaintiff's trademark rights.  Compl. ¶¶ 52-56.

8         Rather an address the actual allegations establishing bad faith in the Complaint, GoDaddy

9    relies on mischaracterizations of what is pled in the Complaint to argue that Plaintiff fails to

10   sufficiently plead GoDaddy's bad faith intent to profit.  Specifically, GoDaddy tries to

11   characterize the facts pled in the Complaint related to GoDaddy's intent as being limited to

12   "GoDaddy's handling of Plaintiff's trademark Complaints" and "its communications with

13   GoDaddy prior to the filing of the Original Complaint."  Mtn. at 13-14.  Based on this

14   characterization, GoDaddy goes on to argue that the Complaint does not establish bad faith intent

15   because "GoDaddy's actions as described in the FAC were in accordance with the established

16   legal framework for domain name disputes" and "the appropriate limits of a registrar's

17   involvement with ownership or trademark disputes"  Mtn. at 13-14.  This argument must fail,

18   however, because it is simply wrong that Plaintiff's allegations of bad faith intent are as limited

19   and GoDaddy contends they are.  And, in any event, GoDaddy fails to identify any legal

20   authority that would equate what it calls "the established legal framework" and "the appropriate

21   limits of a registrar's involvement" with a basis for establishing the absence of a bad faith intent

22   to profit from a plaintiff's mark.

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH
                                            14

1    Finally, GoDaddy's arguments regarding "bad faith intent" must fail because they seek to

2  require the Complaint to plead more facts than are required to overcome a motion to dismiss

3  under Fed. R. Civ. P. 12(b)(6).  Contrary to GoDaddy's assertion in its motion that the

4  Complaint must be dismissed because it "does not establish an 'intent to profit'" the Complaint

5  need only plead "enough facts to state a claim for relief that it plausible on its face."  *Lynn*, 534

6  F.3d at 1121-22.  It is axiomatic that the determination of whether a claim for relief is plausible

7  must be made by "accepting that all facts alleged in the Complaint are true and drawing all

8  reasonable inferences in favor of plaintiff."  *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir.

9  2009).  With respect to intent under the ACPA in particular, it is well settled that "because

10  whether [a defendant] acted with a bad faith intent to profit from [a plaintiff's] mark is a factual

11  question, judgment on the pleadings is typically inappropriate."  *Webquewst.com, Inc. v.*

12  *Hayward Indus.*, 2010 U.S. Dist. LEXIS 118188, *6 (E.D. Cal. 2011) (denying motion for

13  judgment on the pleadings that party had committed cybersquatting).  GoGaddy makes

14  absolutely no allegation that the facts pled in the Complaint are not enough to make it

15  "plausible" that GoDaddy acted with the required bad faith intent and, for this reason alone,

16  GoDaddy allegations regarding bad faith intent do not provide any basis on which to dismiss

17  plaintiff's Complaint.

18   **III.    Count II For Contributory Cybersquatting Should Not Be Dismissed Because The**
19   **Allegations In The Complaint Establish "Control and Monitoring" And**
20   **"Knowledge"**

21    GoDaddy arguments in support of its request that the Court dismiss Plaintiff's claim for

22  contributory cybersquatting are extremely weak.

23    GoDaddy's first argument—that the "allegations [in the Complaint] do not distinguish

24  GoDaddy's function from the role of the defendant registrar in *Lockheed*, namely, providing a

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH
                                                            15

1   mere automated domain name routing function to registrants"—is simply false.  Mtn. at 16:14-

2   17.  To begin with, this is not what the *Lockheed* Court said about the defendant registrar NSI.

3   Instead, rather than describing the role of the defendant registrar NSI—as GoDaddy claims it

4   does—as providing an "automated domain name routing function to registrants," the *Lockheed*

5   case clearly stated that the contrary is true and that defendant registrant "NSI is not part of the

6   process of linking domain names with potentially infringing resources, such as websites."

7   *Lockheed Corp.*, 985 F. Supp. at 952.  Instead, "after the domain name is registered, NSI's

8   involvement is over."  *Id.*  "NSI is only involved in the registration of domain names, not in the

9   use of domain names in connection with goods and services on the internet."  *Id.* (*citing*

10  *Intermatic,* 947 F. Supp. at 1231-32 (noting that there is no technical connection between domain

11  name service and the content of Web sites or other internet resources).  Rather than support

12  GoDaddy's assertion that the defendant registrar NSI provided an "automated routing function,"

13  the *Lockheed* case establishes that NSI did not—and could not—e ven provide a connection to

14  the internet much less the ability to "route" internet traffic to a particular website:

15  
16          NSI does not provide the other services needed to use the domain names in
17          association with a website or other means of communication on the internet.  The
18          services necessary to maintain a Web site, such as an IP address, communications,
19          computer processing and storage are provided by Internet service providers
20          ("ISP") who provide the host computers and connections needed for
21          communications on the internet.

22  *Id.*

23          GoDaddy also argues that the allegations in the Complaint which describe GoDaddy's

24  use of its Name Servers to divert internet users attempting to access the domain names by routing

25  them to a pornographic website "does not distinguish GoDaddy's function from the role of the

26  defendant registrar in *Lockheed*."  Mtn. at 16.  The Court in *Lockheed*, however, stated explicitly

27  that not only did the defendant registrar *not use any Name Servers* in connection with its acts as a

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH
                                                16

1  domain name registrar, "the domain name servers, *which are outside of NSI's control*, connect

2  domain names with internet resources such as Web sites and email systems."  *Lockheed Corp.*,

3  985 F. Supp. at 952.  This not only distinguishes GoDaddy from the registrar in *Lockheed* but it

4  also shows that GoDaddy performs the precise function the *Lockheed* court found the registrar in

5  that case *did not perform*.  *Lockheed Corp.*, 985 F. Supp. at 952.  The Court in *Lockheed* simply

6  could not have been clearer in describing the function of the defendant registrar NSI:

7
8              NSI performs two functions in the domain name system.  First, it screens domain
9              name applications against its registry to prevent repeated registrations of the same
10             name.  Second, it maintains a directory linking domain names with the IP
11             numbers of domain name servers.

12  *Id.*  There is nothing in either the District Court or the Ninth Circuit *Lockheed* opinions that

13  would suggest the defendant domain name registrar in that case performed any functions other

14  the two listed here.

15         GoDaddy's next argument is that the Complaint fails to allege that GoDaddy's conduct

16  was any different from the conduct of the registrar in *Lockheed* and, as such, the assertions in

17  Complaint fail to establish "knowledge of infringement" required to support a claim for

18  contributory cybersquatting.  Mtn. at 17.  This, again, is simply not true.  For one thing, the

19  Complaint alleges that GoDaddy had knowledge that it was using its domain name forwarding

20  service to allow a customer to divert internet users from the domain name "petronastowers.net"

21  to a pornographic website despite written notice from plaintiff that doing so infringed Plaintiff's

22  trademark rights and despite the fact that this Court had issued an order requiring GoDaddy to

23  transfer the domain name "petronatower.net" to Plaintiff because Plaintiff's trademark was being

24  infringed by the same customer who was using GoDaddy's domain name forwarding service in

25  precisely the manner to divert internet users to the same pornographic website.  Compl. ¶ 52-54.

26  GoDaddy makes no attempt to show that this is somehow analogous to the knowledge the

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

17

1    *Lockheed* Court found was inadequate to establish contributory cybersquatting.  In any event,

2    even if GoDaddy were correct that the Complaint alleged conduct that was arguably similar to

3    the registrar in the *Lockheed* case, GoDaddy fails to show how that what is plead is not sufficient

4    to avoid a motion to dismiss because it includes "enough facts to state a claim for relief that is

5    plausible on its face."  *All-Kidd*, 580 F.3d at 974.

6         Although GoDaddy makes no attempt to explain how its final argument would warrant

7    dismissal of Plaintiff's Complaint, it contends nonetheless that "[i]mposing on domain name

8    registrar's the affirmative duty to resolve trademark disputes would place an unmanageable

9    burden on the industry and violate the well-settled case law."  Mtn. at 17.  GoDaddy identifies

10   the "well-settled case law" as a statement in the District Court's opinion in the *Lockheed* case

11   that "NSI cannot reasonably be expected to monitor the internet."  *Lockheed*, 985 F. Supp at 962.

12   It is impossible to comprehend how GoDaddy could believe this quote has any relevance to the

13   present case.  GoDaddy was not asked to "monitor the internet"—Plaintiff simply asked that it

14   stop providing its domain name forwarding service to one of its customers that was obviously

15   using it to exploit Plaintiff's marks and to commit blatant cybersquatting.  GoDaddy fails to

16   explain how complying with such a request "would place an unmanageable burden on the

17   industry." And it is doubtful GoDaddy could if it tried, since most domain name registrars and

18   Internet service providers include compliance with such requests as part of their operating

19   policies.  For example, the policy of the defendant registrar NSI is described in detail in the

20   *Lockheed* case and provides that "if a trademark holder presents NSI with a United States Patent

21   Office Registration of a trademark identical to a currently registered domain name, NSI will

22   require the domain name holder to prove that it had a preexisting right to use the name.  If the

23   domain name holder fails to do so, NSI will cancel the name."  *Lockheed*, 985 F. Supp. at 949.

OPPOSITION TO GODADDY'S MOTION
TO DISMISS FIRST AMENDED COMPLAINT
Case No.: C09-5939 PJH

18

1

2

3

4

5

6

7

8

9

## **<u>CONCLUSION</u>**

For the foregoing reasons, GoDaddy's motion to dismiss should be denied.

Respectfully Submitted,

Dated: February 16, 2011                    Law Offices of Perry R. Clark

/S/

_____
Perry R. Clark